IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-01613-WYD

LAURA M. STANIGAR,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for disability insurance benefits under Title II of the Social

Security Act ["the Act"].  For the reasons stated below, this case is reversed and

remanded to the Commissioner for further fact finding.

I.    BACKGROUND

In January 2008, Plaintiff filed an application for disability insurance benefits.

(Administrative Record ["AR"], ECF No. 8, 204-06.)  Plaintiff claimed that she became

disabled on May 22, 2006, due to bipolar disorder, posttraumatic stress disorder

["PTSD"], agoraphobia, and panic disorder.  (*Id.*, 41, 250.)[1]  The State agency denied

Plaintiff's claim (*id.* 90-91, 117-19), and she requested a hearing before an

administrative law judge ["ALJ"].  Following a hearing (*id.* 38-65), the ALJ concluded that

Plaintiff was not disabled within the meaning of the Act.  (*Id.* 95-106.)

---

[1] Plaintiff originally claimed she became disabled on January 2, 2003.  (*Id.* 250.)

In February 2012, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, vacated the decision, and remanded the case for further proceedings. (AR 113-15.) Following a new hearing in August 2012 (*id.* 66-89), the ALJ again concluded in a decision dated August 24, 2012, that Plaintiff was not disabled within the meaning of the Act. (*Id.* 23-32.)

More specifically, in the sequential evaluation process required by law, the ALJ found at step one that Plaintiff last met the insured status requirements of the Act through September 30, 2006. (AR 25.) The ALJ further found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of May 22, 2006 through her date last insured ["DLI"] of September 30, 2006. (*Id.*)

At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder and anxiety disorder when considered in combination. (AR 26.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (*Id.* 26-27.)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"]. She found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations related to Plaintiff's mental functioning. (AR 27.) These are discussed below.

At step four, the ALJ found that Plaintiff has no past relevant work. (AR 30.) At step five, relying on a vocational expert and considering Plaintiff's age (43 years old on the DLI), education (at least a high school education), work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff

could perform.  (*Id.* 30-31.)  These included representative occupations such as maid

(light work with a specific vocational preparation ["SVP"] of two) and cleaner (medium

work with an SVP of two).  (*Id.* 31.)

The Appeals Council declined review of the ALJ's decision (AR 1-6), making the

ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  Plaintiff

timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ failed to properly determine her RFC, credibility, and

onset of disability.  She also argues that the medical opinion principles were violated.

Finally, Plaintiff argues that the ALJ did not meet her burden at step five.

II.     ANALYSIS

A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and

Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown

v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner, which in this case involve primarily citations to evidence that was not relied on by the ALJ.

B.     Plaintiff's Arguments

Plaintiff first argues that the ALJ failed to consider her medical history, including her chronic history of mental illness, in assessing her RFC.  I note that RFC is defined as the most that a claimant can do in a work setting despite the claimant's mental and physical limitations.  20 C.F.R. § 404.1545(a)(1); *see also Valdez v. Apfel*, 102 F. Supp. 2d 1203, 1205 (D. Colo. 2000) (RFC is "what the claimant is still 'functionally capable of doing on a regular and continuing basis, despite h[er] impairments; the claimant's maximum sustained work capability'") (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

In assessing RFC, "'[t]he ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.'" *Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (quoting SSR 96-8p, 1996 WL 374184, at *7).  A function-by-function evaluation is ordinarily necessary in order to arrive at an accurate RFC.  *Id.*  The RFC assessment must also "'include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.'"  *Id.* (quoting *id.*)

In discussing the evidence relevant to the RFC, the ALJ noted that Plaintiff reported she was drugged and sexually assaulted on the amended alleged onset date. (AR 28.)  She also noted that Plaintiff alleged disabling bipolar and anxiety disorders, with "bipolar symptoms that included pressured speech, mood swings, impulsive behavior, engaging in high-risk behavior, grandiosity, speech disturbance, racing thoughts, anxiety, euphoria, diminished focus and concentration, reduced energy, anhedonia, appetite disturbance, suicidal thoughts, tearfulness, feelings of hopelessness, helplessness and worthlessness and sleep disturbance." (*Id.*)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment.  (AR 28.)

Thus, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:  "claimant would require nonproduction oriented, simple, unskilled work with one, two or three step instructions; should not work in close proximity to coworkers, meaning she should not function as a member of a team and should have minimal direct contact with the public".  (AR 27.)  In support of her opinion, the ALJ found that while Plaintiff's "later-treating psychiatrist, Gary Kielpikowski, M.D., noted an increase in symptoms well after the date last insured, . . . as supported by Dr. Pelc's testimony, during the time period in question claimant's treatment records were not indicative of total disability."  (*Id.*)

The ALJ further stated that "during the time period in question there simply was not objective evidence supporting claimant's alleged limitations."  (AR 29.)  Thus, she noted that "[r]ecords during the time period in question were quite scarce, consisting of claimant's treatment with Ms. Kinnan", and Plaintiff "overall did not display significant compromise of her psychological functioning (2012 hearing testimony)."  (*Id.* 28.)  The ALJ rejected opinions from Drs. Kielpikowski and Pedowitz which were drafted after the expiration of Plaintiff's DLI.  (*Id.* at 28-29.)  She also gave "little weight" to the statements of treating counselors Ms. Galbraith and Ms. Ramlo, as well as the Veteran Administration's determination of disability.  (*Id.* at 29-30.)  She gave "great" and "significant" weight to the Medical Expert testimony" of Dr. Pelc.  (*Id.* at 30.)

I first agree with Plaintiff that the ALJ erred in failing to consider Plaintiff's history before the alleged onset date as reflected in the medical records.  As noted by the Tenth Circuit, "the regulations require the ALJ to 'consider all evidence in [the] case

record when [she] makes a determination or decision whether [claimant is] disabled,' 20

C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and this court requires the ALJ to discuss 'the

significantly probative evidence [s]he rejects'". *Carpenter v. Astrue*, 537 F.3d 1264,

1266 (10th Cir. 2008) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).

This includes medical evidence before the alleged onset date, which the ALJ errs in not

considering. *Id.*; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n. 15 (10th

Cir.2004) (holding medical reports predating disability period at issue "are nonetheless

part of [the claimant's] case record, and should have been considered by the ALJ").

The ALJ also improperly precluded Dr. Pelc's consideration of any of these records,

even though he had reviewed them.  (AR 74-75.)  This was error, because evidence

before an onset date in the record can shed light on the progression of a claimant's

impairments.  *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009).

It is undisputed in this case that Plaintiff presented with a chronic history of

mental illness, manifesting itself at age 22 in a 1985 mental breakdown and suicide

attempt that led to her discharge from the Navy.  (AR 457, 460.)  Plaintiff was assessed

during that time period with depression, borderline personality disorder, bipolar disorder,

schizophreniform disorder and possible substance abuse.  (*Id.* 457.)  Medical records

prior to Plaintiff's amended onset date document continuing problems with depression

and anxiety.  (*See, e.g.,* 358.)  Also, Plaintiff presented with a long history of sexual and

physical abuse since childhood, and multiple rapes.  (*Id.* 448, 459, 554, 560, 568).  After

discharge from the Navy, it appears Plaintiff only worked part-time.  (AR 211-12, 459-

61.)  She reported that she created a ruckus wherever she worked and finally stopped

working altogether in 2003 due to anxiety, emotional irritability and agoraphobia.  (*Id*.

250, 459, 461, 572, 598-99).  It does not appear that the ALJ took into account this

history.

Further, it was noted in medical records in both 2007 and 2009 that Plaintiff had

received counseling and various psychotropic medication intervention since the 1980's.

(*Id*. 460, 571.)  Thus, it appears that while Plaintiff lived in Michigan, she had been

seeing a private psychiatrist either weekly or bi-weekly.  (*Id*. 571).  The ALJ did not

obtain any of those records, which would have been relevant to and helpful to

understanding the progression of Plaintiff's mental impairments.  *See Maes v. Astrue*,

522 F.3d 1093, 1097 (10th Cir. 2008) ("when the ALJ considers an issue that is

apparent from the record, he has a duty of inquiry and factual development with respect

to that issue").

The ALJ also faulted Plaintiff for not receiving treatment from the Department of

Veteran Affairs ["DVA"] during the time period in question, stating that the fact Plaintiff

did not begin receiving mental health treatment through Dr. Kielpikowski or other

therapists until well after the relevant September 30, 2006 date "undercut[] the credibility

of her assertions".  (AR 28.)  However, the ALJ failed to take into account the fact that

after Plaintiff moved from Michigan to Colorado in approximately September 2005,

Plaintiff tried to seek mental health treatment through the Colorado Springs VA office

but was on a waiting list during the relevant time period.  (*Id*. 571-72.)  It was reported in

January 2007 that Plaintiff had been waiting for approximately a year and a half.  (*Id*.

572.)  Thus, Plaintiff did not fail to seek treatment from the DVA during the relevant time period, and the ALJ erred in using this as a basis to undercut Plaintiff's credibility.

I also find that the ALJ improperly discounted the opinion of counselor Deb Kinnan, MA, LPC, that Plaintiff did see during the relevant period.  (AR 608—stating that Ms. Kinnan saw Plaintiff 30 times between June 2006 and October 2007.)  Ms. Kinnan's treatment records document that Plaintiff was actually experiencing many of the symptoms that Plaintiff complained of to the ALJ and which the ALJ found were not fully credible.  Thus, Ms. Kinnan stated that the intake survey and the initial interview of Plaintiff documented "significant symptoms of PTSD; exaggerated startle response, intense fear, hyper-vigilance, irritability, emotionally numb, restless, nightmares, sleeplessness, anxiety and persistent unpleasant thoughts." (*Id.* 608.)  She further stated:

> Much of the time in treatment with Laura was spent dealing with one crisis or another.  She presented as "tightly wound", anxious, hyper vigilant and constantly struggling to control the enormous amount of range inside her. She was constantly agitated and triggered by strangers.  A chronic inability to sleep exacerbated all of her symptoms.  A self imposed agoraphobia was her most successful coping strategy, avoiding everyone and everything as much as possible.  When she finally saw a Psychiatrist for medication, she experienced some improvement with mood and anxiety, although some PTSD symptoms remained.  Staying on these medications, however, was a bit of a challenge.

(*Id.* 609.)  Other treatment notes of Ms. Kinnan during the relevant period indicate that Plaintiff was not sleeping, was experiencing anxiety and PTSD symptoms at times, and was quick to anger (*Id.* 624, 626, 628.)

Ms. Kinnan diagnosed Plaintiff with "Bipolar Disorder, Mixed Episode" and "Posttraumatic Stress Syndromes, Chronic" on Axis I; Personality Disorder on Axis II; and "Psychosocial and environmental issues", "Problems with primary support group", "Problems related to the social environment", "Occupational problems" and other problems on Axis IV.  (*Id.* 609.)  On Axis V she assessed a Global Assessment of Functioning ["GAF"] score of 40, indicative of extremely severe symptoms.[2]

The ALJ stated that Ms. Kinnan's records, "which were reviewed thoroughly by Dr. Pelc prior to his testimony, indicates that while claimant was experiencing the above-described 'paragraph B' limitations, she overall did not display significant compromise of her psychological functioning (2012 hearing testimony)."  (AR 28.) Presumably the ALJ was referring to the testimony of Dr. Pelc at the 2012 hearing. However, Dr. Pelc's testimony does not address the fact that many of Plaintiff's symptoms that she complained of and which the ALJ found were not fully credible were supported by Dr. Kinnan's testimony.  Moreover, while Dr. Pelc focused on the fact that during her treatment with Ms. Kinnan Plaintiff was attending school and engaging in social behaviors such as traveling out of state or going to court to advocate for friends (*id.* 78), Dr. Pelc appeared to be improperly picking and choosing among medical

---

[2] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10h Cir. 2012).  A GAF score between 31 and 40 indicates "'[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school).'" *Id.* (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed.2000)).

records and not considering the entire picture.  This is error.  *See Hardman v. Barnhart*,

362 F.3d 676, 681 (10th Cir. 2004)

Further, neither Dr. Pelc nor the ALJ addressed Ms. Kinnan's diagnosis of PTSD

and Personality Disorder.  This was reversible error, as an ALJ "misapplie[s] the law"

when she fails to consider mental impairments that are diagnosed in the record.

*Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006).[3]  They also ignored the

evidence that Plaintiff had significant problems sleeping.  As the evidence of this

appears to have been significantly probative, as it is mentioned throughout Ms. Kinnan's

records and other medical records (AR 567-68), the ALJ was required to consider this in

assessing the RFC.  *See Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009).  Finally,

the ALJ relied on the fact that "during the time period in question there simply was not

objective evidence supporting claimant's alleged limitations."  (AR 29.)  This was error,

as the Tenth Circuit has made clear that "[a] psychological opinion need not be based

on solely objective 'tests'; those findings 'may rest either on observed signs and

symptoms or on psychological tests.'" *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th

Cir. 2005) (unpublished) (quoting *Robinson*, 366 F.3d at 1083).

I also find that the ALJ improperly discounted the opinion of VA psychiatrist

Robin T. Pedowitz, issued in January 2007.  This is significant because after the first

hearing, the Appeals Council remanded the case to reconsider Dr. Pedowitz's opinion,

---

[3] While Dr. Pelc stated that the diagnosis of personality disorder was identified later in the record, this is inaccurate as the records state that Plaintiff was diagnosed with borderline personality disorder in 1985 when she was hospitalized at Tripler Army Medical Center.  (AR 457.)  Further and more importantly, Dr. Pelc ignored Ms. Kinnan's diagnosis of personality disorder.

which provided the basis for the 100% VA disability effective on November 1, 2006, only

31 days after the expiration of Plaintiff's insured period.  (AR 113).  Similar to

Ms. Kinnan's diagnoses, Dr. Pedowitz diagnosed Plaintiff with Bipolar disorder I with a

history of psychotic symptoms and an Anxiety disorder, NOS, the former likely

exacerbated during military service and the latter likely "inextricably interwoven with her

PTSD." (*Id.* 574-75).  He assigned Plaintiff a GAF score of 48 which he stated applied

to the last 3 to 6 month duration (*id.*), which score is indicative of serious symptoms.

*Keyes-Zachary,* 695 F.3d at 1162 n. 1.  Six months prior to the January 2007 opinion

computes to late July 2006, which is before the September 30, 2006 DLI.  Dr. Pelc

admitted that while the GAF score "would not be determinative regarding severity, . . . it

certainly would indicate that there were some times in which there was some serious --

or, consideration of serious severity of the condition that the claimant was presenting."

(*Id.* 81.)  He further agreed that Dr. Pedowitz's evaluation of January 27, 2007 and the

following record show that by that time frame, Plaintiff "sustain[ed] marked limitation in

social functioning."  (AR 80.)

The ALJ gave "little weight" to Dr. Pedowitz's opinion, stating that his opinions

were drafted after the expiration of the Plaintiff's date last insured.  (*Id.*)  Yet she failed

to acknowledge the fact that Dr. Pedowitz's opinion, at least as to the GAF score,

applied to the prior three to six month period (within the relevant time frame).  Moreover,

the Tenth Circuit has stated that "'evidence bearing upon an applicant's condition

subsequent to the date upon which the earning requirement was last met is pertinent

evidence in that it may disclose the severity and continuity of impairments existing

-12-

before the earning requirement date or may identify additional impairments which could

reasonably be presumed to have been present and to have imposed limitations as of

the earning requirement date.'" *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476,

479 (10th Cir. 1993) (quotations omitted).

The ALJ also erred in connection with the other reasons she gave for assigning

little weight to Dr. Pedowitz's January 2007 opinion.  Thus, the ALJ noted that Plaintiff

informed Dr. Pedowitz in 2007 that she was not undergoing any mental health treatment

aside from receipt of Celexa and Xanax from her primary care physician.  (AR 29.)  The

ALJ ignored the fact, however, that the medical records indicate Plaintiff had been on a

waiting list for the DVA for a year and a half and that Plaintiff had been receiving

treatment from Ms. Kinnan, as discussed previously.  The ALJ also stated that

Dr. Pedowitz's findings were based solely upon Plaintiff's self-reported symptoms.  (*Id.*)

This was error, as Dr. Pedowitz examined Plaintiff and made diagnoses based upon his

examination.  Further, the ALJ cannot reject a mental health provider's opinion solely for

the reason that it was based on Plaintiff's reported symptoms because such rejection

impermissibly substitutes her judgment for that" of the provider.  *Thomas*, 147 F. App'x

at 760.  Indeed, "[t]he practice of psychology is necessarily dependent, at least in part,

on a patient's subjective statements."  *Id.* at 759.

Finally, I find error with the weighing of treating psychiatrist Dr. Kielpikowski's

opinion of August 3, 2009 that the ALJ gave "little weight" to.  Dr. Kielpikowski stated

that Plaintiff "is in treatment here [at the VA oupatient psychiatric clinic in Colorado

Springs, Colorado] for severe PTSD and Bipolar disorder."  (AR 400.)  He then opined:

> This veteran continues to have severe irritability, depression, hypervigilance, avoidance, sleep problems, and high anxiety symptoms, and isolation due to her illness.
>
> Despite medications and therapy, her symptoms continue to persist and interfere with life. They have been so severe, that she has been unable to be in normal public situations without marked distress. She has not been able to be employed in many years due [to] her illness.
>
> Her condition is likely to remain static and she remains totally disabled.

(*Id.*)

The ALJ rejected Dr. Kielpikowski's opinion because "no objective evidence was provided to validate these significant findings."  (AR 29.)  Again, however, "[a] psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas*, 147 F. App'x at 759 (quotation omitted).  Moreover, since the ALJ found that Dr. Kielpikowski was a treating physician, the test for whether his opinion was entitled to controlling weight is whether "it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  The ALJ applied the incorrect legal standard in evaluating his opinion.  She also failed to recognize that even if Dr. Kielpikowski's opinion was not entitled to controlling weight, it was still entitled to deference and should have been weighed using the factors in 20 C.F.R. §§ 404.1527 and 416.927.  *Id.* (citing SSR 96-2p, 1996 WL 374188, at *4).  This is also reversible error.

I find that the ALJ also erred in rejecting Dr. Kielpikowski opinion on the basis

that he did not have "relevant evidence to support his opinion" and "presumably, he

relied mostly, if not entirely, on the claimant's subjective reporting." (AR 29.)   The ALJ

ignored Dr. Kielpikowski's record of treatment of Plaintiff which formed the basis for his

opinion. *(See, e.g.*, AR 400, 430-32, 462-63, 488, 565.)  The ALJ's presumption that he

relied on Plaintiff's subjective reporting again improperly substitutes her judgment for

that of the medical provider.  At the very least, if the ALJ had questions about

Dr. Kielpikowski's opinion or if she believed the medical evidence from him was

inadequate to determine whether a disability exists, the ALJ should have contacted

Dr. Kielpikowski. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

The above errors impact step two (as to the failure to consider certain diagnoses

of Plaintiff) and the RFC, and may well impact later steps.  These errors require reversal

of the ALJ's decision and a remand for further fact finding.  Since additional fact finding

is required, outright reversal and an award of benefits is not appropriate.   *See*

*Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989).

I reject, however, Plaintiff's argument that the ALJ failed to properly apply SSR

83-20, 1983 WL 31249.  As the Commissioner notes, "SSR 83–20 addresses situations

in which an ALJ finds that a person is disabled as of the date she applied for disability

insurance benefits, but it is still necessary to ascertain whether the disability arose prior

to an even earlier date—normally, when the claimant was last insured." *Eichstadt v.*

*Astrue*, 534 F.3d 663, 666 (7th Cir. 2008).  Here, since the ALJ never found that Plaintiff

was disabled, this regulation does not apply.  I also reject any other arguments of

Plaintiff not addressed specifically herein.

III.    CONCLUSION

Based upon the foregoing, I find that the ALJ erred in her assessment of certain

of the medical opinions and in not considering Plaintiff's history before the amended

onset date.  This error may impact step two, the RFC, and later steps of the sequential

evaluation.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C.

§ 405(g).

Dated:  February 17, 2015

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge